UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

TRAVIS MADERSON,

      Petitioner,

v.                                 Case No.  3:17cv152-MCR-CJK

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS,

      Respondent.
_____/

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer, attaching relevant portions of the state court record.  (Doc. 13).  Petitioner did not reply, although invited to do so. (*See* Doc. 16).  The matter is referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that petitioner is not entitled to federal habeas relief.

BACKGROUND FACTS[1] AND PROCEDURAL HISTORY

In the spring of 2012, deputies of the Escambia County Sheriff's Office were looking for petitioner.[2]   On May 10, 2012, a deputy spotted petitioner at approximately 10:40 p.m. driving a white 1998 Ford Mustang east on Beverly Parkway in Pensacola, Florida.  When petitioner stopped at a traffic light at the intersection of Brent Lane[3] and Palafox Street, three ECSO deputies initiated a traffic stop by pulling their patrol cars (with ECSO insignia) behind petitioner's vehicle and activating their lights and sirens.  When the stoplight turned green, petitioner attempted to elude the deputies by veering his vehicle into one of the westbound lanes of Brent Lane, and speeding off the wrong way (east), into oncoming westbound traffic.  Petitioner continued to flee at a high rate of speed (up to 100 miles per hour) driving east in the westbound lanes of Brent Lane, until the intersection of Brent Lane and Davis Highway.  At that intersection, petitioner ran a

---

[1] The facts are drawn from the evidence presented at trial, viewed in the light most favorable to the prosecution.  (Doc. 13, Ex. D (trial transcript)); *see also Jackson v. Virginia*, 443 U.S. 307 (1979).

[2] Petitioner was wanted on a VOP arrest warrant and suspected of shooting someone, but that was not disclosed to the jury.  The parties stipulated that (1) the jury would only be informed that deputies were seeking to make contact with petitioner, and (2) the deputies' traffic stop of petitioner was legal.  (Doc. 13, Ex. D, pp. 79-84).

[3] Beverly Parkway becomes Brent Lane as one proceeds to the east.

red light and moved back into one of the eastbound lanes of Brent Lane.  Deputies

continued their pursuit east with lights and sirens activated.  Petitioner eventually

crashed – just past the intersection of Bayou Boulevard[4] and 9th Avenue – when he

ran a red light at that intersection, collided with another car, and crashed into a pole

in front of the Kentucky Fried Chicken restaurant.  Petitioner exited the car and fled

on foot toward the neighboring Olive Garden restaurant, until he was apprehended

by a deputy outside the Olive Garden.  Petitioner was handcuffed and searched.

Sheriff's deputies found two small bags in petitioner's right front pants pocket.  One

of the bags contained marijuana and the other cocaine.  (Doc. 13, Ex. D (trial

transcript)).[5]

Petitioner was charged in Escambia County Circuit Court Case No. 2012-CF-

2394, with: (1) fleeing or attempting to elude, at high speed, a law enforcement

officer in agency vehicle with siren and lights activated, (2) possessing cocaine, (3)

possessing cannabis, (4) resisting an officer without violence and (5) driving without

a valid driver's license.  (Ex. A, p. 151).  The State nolle prossed Count 5.  (Ex. A,

---

[4] Brent Lane becomes Bayou Boulevard as one proceeds further east.

[5] All references to exhibits are to those provided at Doc. 13, unless otherwise noted.  Where a page of an exhibit bears more than one page number, the court cites the number appearing at the bottom-most center of the page.

Progress Docket Report, Case No. 2012-CF-002394-A, p. 3 line 71). Petitioner went to trial on the remaining counts, and a jury found him guilty of all four counts as charged. (Ex. A, p. 179). Petitioner was adjudicated guilty and sentenced as a habitual felony offender to a total term of 15 years in prison to run consecutively to the 15-year sentence imposed upon the revocation of his probation for robbery with a deadly weapon (Count 1) in Escambia County Circuit Court Case Number 2009-CF-532. (Ex. B, pp. 185-98 (judgment and sentence)). The Florida First District Court of Appeal (First DCA) affirmed on April 4, 2014, per curiam and without opinion. *Maderson v. State*, 135 So. 3d 293 (Fla. 1st DCA 2014) (Table) (copy at Ex. I).

On July 29, 2014, petitioner filed a *pro se* motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800(a). (Ex. J, pp. 1-5). The state circuit court dismissed the motion. (*Id*., pp. 6-7). The First DCA affirmed per curiam without opinion. *Maderson v. State*, 162 So. 3d 990 (Fla. 1st DCA 2015) (Table) (copy at Ex. M). The mandate issued May 27, 2015. (Ex. M).

On May 20, 2015, petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, raising nine grounds. (Ex. N, pp. 1-27). The state circuit court summarily denied relief on all grounds except Ground

VII, which claimed counsel was ineffective for failing to object to the assessment of a lien in the amount of $1500.00 for services of the public defender, without first informing petitioner of his right to a hearing. (Ex. O, pp. 83-209). The court granted Ground VII and ordered the clerk to prepare an amended judgment and sentence striking the $1500.00 public defender fee. (*Id*.). A corrected judgment and sentence was filed on March 31, 2016. (Ex. O, pp. 210-24). The First DCA affirmed per curiam without opinion. *Maderson v. State*, 200 So. 3d 64 (Fla. 1st DCA 2016) (Table) (copy at Ex. P). The mandate issued October 13, 2016. (Ex. P).

Petitioner filed his federal habeas petition on March 2, 2017, raising four claims of ineffective assistance of trial counsel. (Doc. 1). Respondent asserts petitioner is not entitled to relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 13).

## RELEVANT LEGAL PRCINPLES

### Section 2254 Standard of Review

Federal courts are precluded from granting a habeas petition on a claim that was adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's factual determinations are presumed correct unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[6] Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or

---

[6]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *See Thaler v. Haynes*, 559 U.S. 43, 47 (2010); *Woods v. Donald*, 575 U.S. —, —, 135 S. Ct. 1372, 1376 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See Woods*,

135 S. Ct. at 1377 (holding, as to claim that counsel was *per se* ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants: "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.  *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court.  *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004).  The Supreme Court described the "unreasonable application" standard this way:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong.  Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a

substitute for ordinary error correction through appeal." *Harrington,*
*supra*, at 102-103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (*quoting Harrington v. Richter*, 562 U.S. 86 (2011)). The

§ 2254(d) standard "is difficult to meet . . . because it was meant to be." *Richter*,

562 U.S. at 102.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on

the merits in state court where that adjudication "resulted in a decision that was based

on an unreasonable determination of the facts in light of the evidence presented in

the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable

determination of the facts" standard is implicated only to the extent the validity of

the state court's ultimate conclusion is premised on unreasonable fact finding. *See*

*Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable

application" clause, the federal court applies an objective test. *See Miller-El v.*

*Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a

factual determination "will not be overturned on factual grounds unless objectively

unreasonable in light of the evidence presented in the state court proceeding."). 

Federal courts "may not characterize . . . state-court factual determinations as

unreasonable merely because we would have reached a different conclusion in the

first instance." *Brumfield v. Cain*, 576 U.S. —, —, 135 S. Ct. 2269, 2277 (2015) (quotation marks omitted).

Only if the federal habeas court finds that the petitioner satisfied § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

<u>Clearly Established Federal Law Governing Claims of Ineffective Assistance of Counsel</u>

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set out a two-pronged standard for ineffective assistance of counsel claims. The petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *See Strickland*, 466 U.S. at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness. Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (*quoting Strickland*, 466 U.S. at 694).

"Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.  Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.   The burden to overcome that presumption and to show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) ("To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." (quotation marks and alterations omitted)).  "[T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Titlow*, 571 U.S. at 23 (quotation marks and alterations omitted).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different result.  *See Strickland*, 466 U.S. at 694.  A reasonable probability is one that sufficiently undermines confidence in the outcome.  *Id.*  "The

likelihood of a different result must be substantial, not just conceivable." *Richter*,
562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of
historical facts in the course of evaluating an ineffectiveness claim are subject to the
presumption of correctness, while the performance and prejudice components are
mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting
*Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371
(2010). "Establishing that a state court's application of *Strickland* was unreasonable
under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105. As the Court in
*Richter* explained:

> The standards created by *Strickland* and § 2254(d) are both
> "highly deferential," and when the two apply in tandem, review is
> "doubly" so. The *Strickland* standard is a general one, so the range of
> reasonable applications is substantial. Federal habeas courts must
> guard against the danger of equating unreasonableness under *Strickland*
> with unreasonableness under § 2254(d). When § 2254(d) applies, the
> question is not whether counsel's actions were reasonable. The
> question is whether there is any reasonable argument that counsel
> satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

## DISCUSSION

Ground One          "Trial Counsel Rendered Ineffective Assistance by Failing to Object to the Prosecution's Comments Shifting the Burden of Proof Denying Petitioner His U.S. Constitutional Rights to Due Process, a Fair Trial, and Effective Assistance of Counsel." (Doc. 1, p. 3).

As background for this claim, petitioner describes his defense theory: "that he was not the driver of the vehicle that was fleeing and attempting to elude law enforcement officers as charged in count one; that there was another person driving the car, and that person was successful in exiting the vehicle after it was wrecked against a power pole before Petitioner was able to exit the car and be caught by law enforcement." (Doc. 1, p. 3). Petitioner contests two comments by the prosecutor – one in opening statement and one in closing argument – claiming the comments improperly shifted the burden of proof. In opening statement, the prosecutor made this comment after reviewing what he believed the evidence would show:

. . . . That's the evidence that you're going to hear.

Now, I anticipate that Mr. Russell [defense counsel] is going to get up here and he may suggest to you that there was another person in the car. What I want you to do is pay attention to the evidence. The evidence is going to tell you and show you there was one person in that car. **You are not going to hear anything or see anything, there's not going to be a shred of evidence there was another person in that car simply because there wasn't.** There was one person in that vehicle and it was the defendant Travis Maderson.

(Ex. D, p. 112 (trial transcript)) (contested comment emphasized).

In closing argument, the prosecutor made this comment after reviewing the

elements of each offense and the evidence presented at trial:

> . . . .
>
> Now, as I told you this morning, the defense, I anticipate, is going to be that they are going to try and argue that it was somebody else in the car.
>
> **Now, at no point did you hear anything, or see anything or view anything about somebody else being in the vehicle.**
>
> Sergeant O'Neal told you that he could see into the vehicle and it looked like there was one person. And also, on that note, the videos, as I said this morning, the videos are helpful. They show you the chase. They show you the car going on the wrong side of the road, fleeing. But the videos are not – they are not great quality. You know, it's hard to distinguish – that's why I asked every officer, you know, could you see more than what's on the video?
>
> You know, those videos are not – I don't want to say they are not accurate, they are accurate, but obviously, that does not accurately portray what an officer can see.

(*Id.*, pp. 223-24) (contested comment emphasized). Petitioner faults defense counsel

for failing to object.

The parties agree that petitioner presented this claim to the state courts in his

Rule 3.850 proceeding as Ground II; that the state circuit court denied relief on the

merits; and that the First DCA summarily affirmed without explanation. (Doc. 1, p. 4; Doc. 13, pp. 17-19). The First DCA's summary affirmance is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d). *See Richter*, 562 U.S. at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

Where, as here, there has been one reasoned state judgment rejecting a federal claim followed by a later unexplained order upholding that judgment, federal habeas courts employ a "look through" presumption, described by the Supreme Court as follows: "[T]he federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, — U.S. —, 138 S. Ct. 1188, 1192 (2018).

The state circuit court utilized the *Strickland* standard, explaining:

A claim of ineffective assistance of trial counsel is reviewed under the test as outlined in Strickland v. Washington, 466 U.S. 668 (1984). Under this standard, a defendant is not entitled to relief unless he can show that his attorney's performance was both deficient **and** that he was prejudiced by the alleged deficiency. In order to demonstrate prejudice under Strickland, a defendant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

(Ex. O, pp. 83-84) (emphasis in original).  The circuit court gave these reasons for

rejecting petitioner's claim:

> **Ground II** – Defendant next argues that counsel erred by shifting
> the burden of proof in opening statements.  The prosecutor informed
> the jury in opening statements that "[y]ou are not going to hear anything
> or see anything, there's not going to be a shred of evidence there was
> another person in that car simply because there wasn't."  The Court
> again finds that the argument presented by the State was acceptable and
> that no error occurred.  Similarly, as with ground I, the Court also finds
> that, even if it was error, it was harmless because Defendant cannot
> show that the outcome of the proceeding would have been different but
> for the error.

(Ex. O, pp. 84-85) (footnote omitted).

Petitioner argues that the state court unreasonably applied *Strickland*'s

prejudice prong because it required him to show that the outcome of his trial <u>would</u>

<u>have</u> been different, instead of merely showing a <u>reasonable probability</u> the outcome

would have been different.  (Doc. 1, p. 4).  This court need not address the prejudice

issue, because the First DCA's rejection of petitioner's claim on *Strickland's*

performance prong was a reasonable application of *Strickland*.  *See Strickland*, 466

U.S. at 697 (holding that the court may dispose of an ineffective assistance claim if

petitioner fails to carry his burden on either of the two *Strickland* prongs).

"Opening remarks are not evidence, and the purpose of opening argument is to outline what an attorney expects to be established by the evidence." *Occhicone v. State*, 570 So. 2d 902, 904 (Fla. 1990) (*citing Whitted v. State*, 362 So. 2d 668 (Fla. 1978).   As set out above, the prosecutor anticipated petitioner's theory of defense and made a good faith attempt to explain what he believed the evidence would show.  (Ex. D, p. 112).  In closing argument, "a prosecuting attorney may comment on the jury's duty to analyze and evaluate the evidence and state his or her contention relative to what conclusions may be drawn from the evidence." *Evans v. State*, 838 So. 2d 1090, 1094 (Fla. 2002); *see also Tucker v. Kemp*, 762 F.2d 1496, 1506 (11th Cir. 1985) (holding that a prosecutor may argue both facts in evidence and reasonable inferences from those facts) (citations omitted); *United States v. Johns*, 734 F.2d 657, 663 (11th Cir. 1984) (holding that the prosecutor is not limited to a bare recitation of the facts; he may comment on the evidence and express the conclusions he contends the jury should draw from the evidence).  As set out above, the prosecutor's closing argument analyzed the evidence presented at trial and suggested to the jury that it proved petitioner was the only occupant of the vehicle. (Ex. D, pp. 223-24).

Petitioner's assertion that "the prosecutor had no premise to argue that its case was going to establish there were not two people in the vehicle[,]" (doc. 1, pp. 3-4), is wholly refuted by the record.  Deputy O'Neal testified that before the pursuit of the white Mustang began, he could see into the Mustang and saw only one person inside the vehicle.  (Ex. D, p. 164-65, 171-72).   Deputy Brewton testified that as he arrived at the scene where the white Mustang crashed during pursuit, he observed petitioner open and exit the driver's side door.  (Ex. D, pp. 140-41, 149).  Deputy Milstead testified that when he arrived at the crash scene, he "observed an individual running from the driver's side of the car", pursued this individual on foot, arrested him after he fell, and that the individual he arrested was petitioner.  (Ex. D, pp. 178-79).

The state court reasonably determined that the prosecutor's arguments were not improper and, accordingly, that defense counsel's failure to object was not deficient performance.  *See Chandler v. Moore*, 240 F.3d 907, 914 (11th Cir. 2001) (concluding that prosecutor was properly commenting on the evidence; that none of the prosecutor's contested statements were improper or erroneous; and that defense counsel could not be deemed ineffective for failing to object); *see also Bolender v. Singletary*, 16 F.3d 1547, 1473 (11th Cir. 1994) ("[I]t is axiomatic that the failure to

raise nonmeritorious issues does not constitute ineffective assistance."); *Freeman v. Attorney Gen. Fla.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim. . . ."). Petitioner is not entitled to federal habeas relief on Ground One.

Ground Two      "Trial Counsel Rendered Ineffective Assistance by Failing to Properly Cross-Examine and Bring Attention to Officer Brewton's Conflicting Testimony to Establish Petitioner's Innocence Denying Him His U.S. Constitutional Right to Effective Assistance of Counsel." (Doc. 1, p. 5).

Petitioner claims trial counsel was ineffective for failing to cross-examine Deputy Brewster on how he could have observed petitioner exit the driver's door of the Mustang when Brewster was not the first officer on scene, and the first officer on scene (Deputy Milstead) testified that the driver's door was already open and the vehicle empty when he arrived. (Doc. 1, p. 5).

The parties agree that petitioner presented this claim to the state courts in his Rule 3.850 proceeding as Ground III; that the state circuit court denied relief on the merits; and that the First DCA summarily affirmed without explanation. (Doc. 1, pp. 5-6; Doc. 13, pp. 26-28). The First DCA's summary affirmance is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d). *See*

*Richter*, 562 U.S. at 100.  This court looks through the First DCA's unexplained decision to the lower circuit court's rationale.  *See Wilson*, 138 S. Ct. at 1192.

The state circuit court utilized the *Strickland* standard, (Ex. O, pp. 83-84), and rejected petitioner's claim for these reasons:

> **Ground III** – Defendant argues that his attorney erred in failing to adequately cross-examine Deputy Jason Freauff, Deputy Ty Brewton, Sergeant Thomas O'Neal, and Officer Mike Milstead. Deputy Freauff testified that he was a deputy with the Escambia County Sheriff's Department and was working on May 10, 2012.  Deputy Freauff said that he attempted to pull over a white Mustang at a red light.  The Mustang fled into oncoming traffic and ran a red light. Although Deputy Freauff did not see the vehicle actually crash, he said he saw the Mustang had wrecked against a pole near a Kentucky Fried Chicken restaurant.  Deputy Freauff did not see anyone run from the vehicle.  Defendant was brought to the deputy in handcuffs and placed in his patrol car.  Before placing him in the patrol car, Deputy Freauff said that he searched Defendant and found marijuana as well as cocaine.
>
> Deputy Ty Brewton testified that he received a dispatch on May 10, 2012 about a white Mustang.  Deputy Brewton was driving a Tahoe marked with the insignia of the Escambia County Sheriff's Office. Deputy Brewton activated his lights and attempted to stop the Mustang. The Mustang fled into oncoming traffic and began running red lights in an attempt to get away.  Although he did not see the crash, Deputy Brewton said that the Mustang hit another car and "stopped on a telephone pole in front of the Kentucky Fried Chicken on Bayou Boulevard."  Brewton said that he saw a man get out of the vehicle's driver side and start to run towards the Olive Garden restaurant.  Deputy Brewton said that defendant was the man who ran from the Mustang.
>
> Sergeant Thomas O'Neal testified that he received a dispatch on May 10, 2012 about a white Mustang.  Sergeant O'Neal was driving a

marked Tahoe with agency markings and his lights and siren activated. Sergeant O'Neal testified that only one person was inside the vehicle he was pursuing. Sergeant O'Neal said the Mustang ended up crashing near a Kentucky Fried Chicken restaurant. Sergeant O'Neal observed that the driver's side of the vehicle was open and the passenger door was closed. Later, Sergeant O'Neal said that a man was taken into custody. Sergeant O'Neal could not identify Defendant as the man driving the vehicle.

Officer Mike Milstead testified that he received a dispatch about a white Mustang on May 10, 2012 while he was on patrol. Officer Milstead said the Mustang passed him at a high rate of speed as other officers were following him. Officer Milstead was driving a marked Tahoe with agency insignia and his lights and siren were activated. Officer Milstead lost sight of the Mustang for a few seconds during the chase. When he next saw the vehicle, it had already crashed. Officer Milstead said he then observed a man running from the driver side of the vehicle. When the man fell down, Officer Milstead took him into custody. The man he took into custody was Defendant.

The Court has examined the complete testimony from each witness and finds that Defendant cannot demonstrate any error. Although Defendant insists that the testimony of the witnesses was inconsistent, the Court does not agree. Since counsel did not fail to conduct a proper cross-examination of each witness, no error occurred and this claim is denied.

(Ex. O, pp. 85-86) (footnotes citing to record omitted).

The state court's findings of fact are amply supported by the record and are presumed correct. (*See* Ex. D (trial transcript)). The premise of petitioner's complaint is that as the second officer to arrive at the scene of the crash, Deputy Brewton could not possibly have seen more than Deputy Milstead, who arrived first.

On cross-examination of Deputy Brewton, defense counsel elicited that the incident happened at night; that Brewton could not see into the Mustang; that although Brewton believed he saw the car door of the Mustang come open, the video from his dashboard camera showed the car door already open; and that Deputy Milstead's patrol vehicle was in front of Brewton's vehicle as they arrived at the crash. (Ex. D, pp. 150-51). On cross-examination of Deputy Milstead, counsel elicited that Milstead could not see into the Mustang; that the Mustang's door was already open when he saw the crashed vehicle; that he did not see petitioner exit the vehicle; and that there were other officers behind him. (Ex. D, pp. 184-87). Counsel highlighted these points during closing argument and urged the jury to question not only Brewton's credibility, but also Deputy O'Neal's credibility:

> So I would ask you to take that into consideration in deciding whether or not officer O'Neal's testimony is credible, whether or not the State has proved beyond a reasonable doubt that Mr. Maderson was, in fact, driving the vehicle.
>
> You are going to hear - or you will recall that officer Brewton testified that he saw the driver's door open and the defendant get out. But if you'll also recall, officer Brewton was the second officer at the scene of the crash. Officer Milstead was first.
>
> . . . .

> And officer Milstead is the first one there, and the most he can
> say is he came from the driver's side of the car. He did not see the door
> open. He did not see Mr. Maderson get out.

(Ex. D, pp. 231-32). So, counsel emphasized to the jury the exact point petitioner

contends he did not.

On this record, the court cannot say that no "fairminded jurist could agree"

with the state court's determination that counsel's cross-examination of Deputy

Brewton and the other witnesses was within the wide range of reasonable

professional assistance. The state court's rejection of petitioner's claim was not

contrary to and did not involve an unreasonable application of the *Strickland*

standard. Petitioner is not entitled to habeas relief on Ground Two.

Ground Three    "Trial Counsel Rendered Ineffective Assistance by Failing to
Object to a Jury Instruction Which Excluded an Element of the
Offense Denying Petitioner His U.S. Constitutional Right to
Effective Assistance of Counsel, Due Process, and a Fair Trial."
(Doc. 1, p. 7).

Petitioner alleges the jury instruction for fleeing or attempting to elude a law

enforcement officer erroneously failed to reflect the amended version on one

essential element – that after he was ordered to stop, he "willfully fled in a vehicle

in an attempt to elude a law enforcement officer." (Doc. 1, p. 7). Petitioner contends

the erroneous instruction "relieved the prosecution of its burden to prove that

Petitioner *intentionally* fled from law enforcement". (*Id.*) (emphasis in original). Petitioner faults counsel for failing to object.

The parties agree that petitioner presented this claim to the state courts in his Rule 3.850 proceeding as Ground IV; that the state circuit court denied relief on the merits; and that the First DCA summarily affirmed without explanation. (Doc. 1, pp. 7-8; Doc. 13, pp. 33-34). The First DCA's summary affirmance is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d). *See Richter*, 562 U.S. at 100. This court looks through the First DCA's unexplained decision to the lower circuit court's rationale. *See Wilson*, 138 S. Ct. at 1192.

The state circuit court utilized the *Strickland* standard, (Ex. O, pp. 83-84), and rejected petitioner's claim for these reasons:

> **Ground IV** – Defendant argues that counsel erred by failing to object to a jury instruction with respect to the offense of fleeing or attempting to flee a LEO with siren and lights activated. Defendant correctly notes that an amended instruction includes language that a defendant guilty of this offense must have ". . .willfully fled in a vehicle in an attempt to elude a law enforcement officer." The Court finds that, although it was error not to read the amended instruction, Defendant cannot show any prejudice.
>
> Even if a defendant received an erroneous instruction, the error is "deemed harmless where there is no reasonable possibility that the faulty instruction contributed to the verdict." Here, the testimony was abundantly clear that Defendant attempted to flee law enforcement at a high rate of speed after they had activated their emergency lights.

Defendant then crashed the vehicle and was taken into custody. This claim, accordingly, is denied since the result of the proceeding would have been the same even with the amended instruction.

(Ex. O, pp. 4-5) (footnotes omitted).

This court defers to the state court's determination that the jury instruction given at petitioner's trial on the element of intent did not reflect the Florida Supreme Court's September 8, 2011, amendment. The 2011 amended instruction read, in relevant part:

> (Defendant), knowing [he] [she] had been directed to stop by a duly authorized law enforcement officer, **willfully fled in a vehicle in an attempt to elude a law enforcement officer**.
>
> . . . .
>
> Willfully means intentionally, knowingly and purposefully.

*In re Standard Jury Instructions in Criminal Cases – Report 2011-01*, 73 So. 3d 136, 139-40 (Fla. 2011) (emphasis added).

The instruction given at petitioner's trial read, in relevant part:

> Travis Shrell Maderson, knowing he had been directed to stop by a duly authorized law enforcement officer, **willfully refused or failed to stop the vehicle in compliance with the order**.
>
> . . . .
>
> Willfully means intentionally, knowingly and purposefully.

(Ex. D, pp. 239-40) (emphasis added).

The state court's conclusion that petitioner nonetheless failed to establish prejudice under *Strickland* is reasonable. Contrary to petitioner's assertion, the instruction given at his trial did not exclude an essential element of the offense – it included every essential element, including that he acted willfully (i.e., intentionally). The instruction merely failed to reflect the stylistic change in the amended version. The jury found, and the evidence overwhelmingly showed, that petitioner willfully fled in a vehicle in an attempt to elude sheriff's deputies. There is no reasonable probability the jury's verdict would have been different had counsel objected to the instruction and substituted the amended version. Petitioner is not entitled to habeas relief on Ground Three.

Ground Four          "Trial Counsel Rendered Ineffective Assistance by Failing to Investigate and Call an Expert Who Would Have Testified that Petitioner's Injuries Were Inconsistent with Him Being the Driver of the Vehicle, Denying Petitioner His U.S. Constitutional Right to Effective Assistance of Counsel and Due Process." (Doc. 1, p. 8).

Petitioner alleges he told trial counsel "that EMT personnel informed him that his injuries were inconsistent with him being the driver of the vehicle." (Doc. 1, p. 8). Petitioner faults trial counsel for failing to investigate and call the EMT personnel to provide "expert" testimony to that effect. (*Id*., pp. 8-9).

The parties agree that petitioner presented this claim to the state courts in his Rule 3.850 proceeding as Ground VI; that the state circuit court denied relief on the merits; and that the First DCA summarily affirmed without explanation. (Doc. 1, pp. 8-9; Doc. 13, pp. 40-41). The First DCA's summary affirmance is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d). *See Richter*, 562 U.S. at 100. This court looks through the First DCA's unexplained decision to the lower circuit court's rationale. *See Wilson*, 138 S. Ct. at 1192.

The state circuit court utilized the *Strickland* standard, (Ex. O, pp. 83-84), and rejected petitioner's claim for these reasons:

> **Ground VI** – Defendant alleges that counsel erred in failing to interview and call EMT personnel he claims told him that his injuries were "inconsistent with him being the driver." To establish a facially sufficient claim for failing to call a witness, a defendant must provide the identity of the prospective witness, the substance of the witness's testimony, an explanation about how the omission of this evidence prejudiced the outcome of the trial, and an assertion that the witness was available to testify.
>
> The Court finds that Defendant cannot show prejudice in light of the testimony presented at trial showing that he was the driver. The unnamed EMT personnel cited by Defendant did not see the crash and could not have provided a direct account of the incident. Since their testimony would not have [a]ffected the outcome of the trial, this claim is denied.

(Ex. O, p. 87-88) (footnote omitted).

"Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978) (citations omitted); *see also Sullivan v. DeLoach*, 459 F.3d 1097, 1108-09 (11th Cir. 2006) (holding that where a petitioner raises an ineffective assistance claim based on counsel's failure to call a witness, the petitioner carries a heavy burden to show prejudice "because often allegations of what a witness would have testified to are largely speculative." (quotations omitted)). Petitioner merely speculates on the unidentified EMT's proposed testimony. Petitioner does not identify the EMT, does not assert he actually contacted the EMT, and does not present evidence of the EMT's actual testimony.  Without some specificity, any assertion that EMT personnel would testify as petitioner claims is hypothetical and does not entitle him to habeas relief.

Furthermore, the fact that petitioner informed counsel of the EMT's proposed testimony and counsel chose not to call the witness indicates a strategic decision. Counsel reasonably could have concluded that the proposed testimony of an EMT who did not witness the pursuit or the crash was unlikely to raise reasonable doubt about the testimony of the three law enforcement officers who eye-witnessed the

incident.  (Ex. D, pp. 164-65, 171-72 (Deputy O'Neal's testimony), pp. 140-41, 149 (Deputy Brewton's testimony), pp. 178-79 (Deputy Milstead's testimony)). Moreover, the record indicates that petitioner suffered a head injury.  (Ex. D, p. 179 (describing that petitioner's head was bleeding)).  Petitioner provides no reasoning why a head injury would be consistent with a passenger injury but not a driver injury.

Fairminded jurists can concur in the state court's determination that petitioner failed to establish deficient performance under *Strickland*.  Fairminded jurists can also concur in the state court's determination that petitioner failed to establish a reasonable probability the result of his trial would have been different had counsel called his proposed witness to testify on the issue of identity (whether petitioner was the driver).  Petitioner is not entitled to federal habeas relief on Ground Four.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice

of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (*quoting* 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. —, 137 S. Ct. 759, 774 (2017) (*quoting Miller-El*, 537 U.S. at 327). The petitioner here cannot make the requisite showing. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.   That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Travis Shrell Maderson*, Escambia County Circuit Court Case No. 2012-CF-2394, be DENIED.

2.   That the clerk be directed to close the file.

3.   That a certificate of appealability be DENIED.

At Pensacola, Florida this 24th day of September, 2018.


/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.